*United States v. Martin*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17th day of February, two thousand twenty-six.

PRESENT:
> JOSEPH F. BIANCO,
> MYRNA PÉREZ,
> MARIA ARAÚJO KAHN,
> *Circuit Judges.*

---

UNITED STATES OF AMERICA,

        *Appellee*,

    v.

TYRIQ MARTIN,

        *Defendant-Appellant.*

25-604-cr

---

| | |
|---|---|
| FOR APPELLEE: | STEPHANIE T. LEVICK (Katherine E. Boyles, *on the brief*), Assistant United States Attorneys, *for* David X. Sullivan, United States Attorney for the District of Connecticut, New Haven, Connecticut. |
| FOR DEFENDANT-APPELLANT: | PHOEBE BODURTHA, Assistant Federal Defender, *for* Terence S. Ward, Federal |

Defender for the District of Connecticut, Hartford, Connecticut.

Appeal from a judgment of the United States District Court for the District of Connecticut (Omar A. Williams, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court, entered on March 13, 2025, is **AFFIRMED**.

Defendant-Appellant Tyriq Martin appeals from the district court's judgment revoking his term of supervised release and sentencing him to 24 months' imprisonment, to be followed by one year of supervised release. Martin argues that the 24-month sentence is procedurally and substantively unreasonable. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

In April 2023, Martin was sentenced to 15 months' imprisonment, to be followed by three years' supervised release, for unlawful possession of ammunition after having been convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). The conviction arose from Martin's possession of a loaded firearm on June 15, 2022, as he was fleeing from members of the New Haven Police Department, who were attempting to arrest him for an active State of Connecticut arrest warrant for ammunition and narcotics-related charges. On July 23, 2024, Martin completed his term of incarceration on the federal conviction and commenced supervised release; at the same time, he was paroled on his state case. Standard Condition Five of Martin's supervised release provided that he must "live at a place approved by the probation officer" and that he must notify the officer of any change in living arrangements. App'x at 14. Upon his release, Martin was authorized by his state parole and federal probation officers to reside with

2

his then-girlfriend and their child. On September 9, 2024, Martin informed his probation officer that, due to relationship issues with his girlfriend, he had left his previously authorized residence and been ordered by his state parole officer to reside at the Eddy Center, a halfway house, until a new residence, Martin's brother's home, was approved. On October 14, the probation officer was informed by Martin's state parole officer that Martin had left the Eddy Center without permission and cut off his state-issued ankle monitor. Martin did not inform the probation officer of his change in residence and did not otherwise contact or communicate with the officer. On October 24, the United States Probation Office filed a petition for a warrant, which was granted on October 28. On October 30, Martin was arrested. On March 11, 2025, the district court held a hearing on Martin's violation of supervised release, at which Martin admitted to violating Standard Condition Five. Pursuant to the policy statements of the United States Sentencing Guidelines (the "Guidelines"), the advisory range for this Grade C violation of the terms of supervised release, with a Criminal History Category III, is 5 to 11 months' imprisonment. At the violation proceeding, the government sought a sentence within the advisory Guidelines range and Martin sought a Guidelines sentence of one to two months' incarceration, followed by the remainder of any sentence to be served on home detention and a period of supervised release. The district court revoked Martin's supervised release and sentenced him to 24 months' imprisonment, to be followed by one year of supervised release. This appeal followed.

"Sentences for violations of supervised release are reviewed under the same standard as for sentencing generally: whether the sentence imposed is reasonable." *United States v. Brooks*, 889 F.3d 95, 100 (2d Cir. 2018) (internal quotation marks and citation omitted). "We

3

review the procedural and substantive reasonableness of a sentence under a deferential abuse-of-discretion standard." *United States v. Degroate*, 940 F.3d 167, 174 (2d Cir. 2019) (internal quotation marks and citation omitted). Where the "defendant does not raise an objection on [] procedural grounds at the time of sentencing, our review is confined to plain error." *United States v. Fletcher*, 134 F.4th 708, 711 (2d Cir. 2025). To establish plain error, a defendant must show: "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the [defendant's] substantial rights; and (4) the error seriously affects the fairness, integrity[,] or public reputation of judicial proceedings." *United States v. Moore*, 975 F.3d 84, 90 (2d Cir. 2020) (internal quotation marks and citation omitted).

## I.    Procedural Reasonableness

"A sentence is procedurally unreasonable if the district court fails to calculate (or improperly calculates) the Sentencing Guidelines range, treats the Sentencing Guidelines as mandatory, fails to consider the [Section] 3553(a) factors, selects a sentence based on clearly erroneous facts, or fails adequately to explain the chosen sentence." *United States v. Smith*, 949 F.3d 60, 66 (2d Cir. 2020) (internal quotation marks and citation omitted). Although "a district court must sufficiently explain its reasoning so that the parties, the public, and a reviewing court can understand the justification for the sentence, particularly when there is a material deviation" from the Guidelines, *United States v. Aldeen*, 792 F.3d 247, 255 (2d Cir. 2015), *superseded by statute on other grounds as recognized in Smith*, 949 F.3d at 64, "the degree of specificity required for the reasons behind a [violation of supervised release] sentence is less than that for plenary sentencing," *Smith*, 949 F.3d at 66.

The fact that the district court imposed an above-Guidelines sentence is relevant to our analysis. "Where there is a variance [from the Guidelines range], on appellate review, we may take the degree of variance into account and consider the extent of a deviation from the Guidelines." *Aldeen*, 792 F.3d at 252 (internal quotation marks and citation omitted). Indeed, a "major departure should be supported by a more significant justification than a minor one." *Id.* (internal quotation marks and citation omitted).

As a threshold matter, Martin argues that the district court failed to adequately explain the basis for its non-Guidelines sentence. Because Martin failed to raise this procedural issue before the district court, we review for plain error. Prior to imposing the sentence, the district court discussed in detail its consideration of the statutory sentencing factors, under 18 U.S.C. § 3553(a), that are applicable to a supervised release violation pursuant to 18 U.S.C. § 3583(e).[1] More specifically, the district court explained:

> Mr. Martin decided to defy the supervision that was keeping him out of prison, and for that there must be consequences. Deciding to cut off all contact with probation requires a sentence that discourages repeat behavior from the accused and that prevents others on supervision from thinking it's worthwhile to violate their release as well. So deterrence is important here. It's also important because that's the only way that probation is able to convince other folks under supervision that they should comply with their conditions of release. So, Mr. Martin, leaving your authorized residence and disconnecting with probation prevents supervision all together. . . .

App'x at 53. As to the basis for the upward variance from the advisory Guidelines range, the

---

[1] We note that the district court recognized, as the Supreme Court recently reiterated in *Esteras v. United States*, 606 U.S. 185 (2025), that Section 3553(a)(2)(A) is not one of the factors that it could consider for a supervised release violation under Section 3583(e). *See* App'x at 44–45; *Esteras*, 606 U.S. at 196 (explaining that, because of the exclusion of Section 3553(a)(2)(A) from the list of factors contained in 18 U.S.C. § 3583(e), "when a defendant violates the conditions of his supervised release, . . . a court must consider the *forward-looking* ends of sentencing (deterrence, incapacitation, and rehabilitation), but may not consider the *backward-looking* purpose of retribution" (emphases in original)).

district court subsequently explained that, "[d]ue to the nature and circumstances of this violation and for deterrence, a guideline sentence simply is inadequate, particularly in light of the short time that Mr. Martin complied with his supervision" and "in the light of the fact that Mr. Martin's state conditional discharge will not provide any supervision on its own." *Id.* at 56. On this record, we discern no procedural error, plain or otherwise, with respect to the sufficiency of the reasoning provided by the district court.[2]

Martin also argues that the district court erred in considering allegations concerning uncharged conduct—*i.e.*, the circumstances of his arrest in October 2024—in connection with the imposition of his sentence. In particular, Martin contends that the district court was not permitted to consider any allegations of uncharged criminal conduct surrounding that arrest without finding those facts by a preponderance of the evidence, and that consideration of those allegations violated Martin's due process and confrontation rights. As set forth below, Martin has failed to demonstrate that the district court improperly considered any allegations of uncharged criminal conduct surrounding his arrest in determining the sentence for his violation of supervised release.

Although Martin argues that consideration of his arrest "clearly drove the district court's [sentencing] decision," Appellant's Br. at 18, the record contradicts that assertion. As the

---

[2] We are similarly unpersuaded by Martin's contention that the district court procedurally erred because it failed to provide sufficient reasons for its upward variance in writing. Martin's challenge to the adequacy of the district court's written statement of reasons is foreclosed by our decision in *United States v. Smith*, where we stated that, "unless and until the Judicial Conference and Sentencing Commission issue a written [statement-of-reasons] form . . . the sentencing judge need not file a written statement of reasons for a [violation of supervised release] sentence that is outside the advisory Guidelines range." *Smith*, 949 F.3d at 65. In any event, the district court did provide a statement of reasons that reiterated its analysis on the record during the revocation proceeding.

district court began explaining its sentence, it clearly described the conduct that was the basis for the violation—that is, "Martin violated his supervised release by violating [S]tandard [C]ondition [F]ive, namely by leaving the Eddy Center without permission from his probation officer, which conduct also included cutting off his state-issued location monitoring device, and failing to contact probation as to his change of residence; basically, he prevented his supervision entirely." App'x at 52.

To be sure, the district court did describe the alleged circumstances of Martin's October 2024 arrest: that "he was seen in a stolen car along with another person and fled from police," which was "similar to the conduct which led to his arrest in his underlying federal case. And while the police did not find a loaded gun on [Martin's] person in this instance, they did find two pistols along the path of flight of Mr. Martin and the other male." *Id.* at 55. However, in response to concerns raised by defense counsel that it was impermissible to consider "those things," the district court noted that defense counsel had raised "a fair point" and explicitly disclaimed any reliance on any inferences of criminal conduct that could be drawn from the alleged circumstances surrounding the arrest. *Id.* at 44.

To the extent Martin suggests that the district court could not consider the arrest as part of the context of his absconding from supervision, we disagree. We have held that the sentencing court is permitted to "consider the [violation] conduct in context to determine the extent to which it reflected a betrayal of the court's trust in imposing . . . [its] sentence for the underlying . . . conviction." *United States v. Verkhoglyad*, 516 F.3d 122, 132 (2d Cir. 2008); *see also United States v. Welcome*, No. 22-2864, 2023 WL 8253682, at *2 (2d Cir. Nov. 29, 2023) (summary order) ("The district court's careful analysis, including its assessment of the

7

seriousness of the violations, placed [the defendant's] conduct in context to determine the extent to which it reflected a betrayal of the court's trust—an assessment that informed its resulting sentence." (internal quotation marks and citation omitted)); *United States v. Grady*, 818 F. App'x 86, 89 (2d Cir. 2020) (summary order) ("In a supervised release proceeding, a district court need not consider a violation in a vacuum." (citing *Verkhoglyad*, 516 F.3d at 131)). Thus, we discern no procedural error in the district court's sentence.[3]

## II.    Substantive Reasonableness

We will vacate a sentence as substantively unreasonable "only in exceptional cases where the trial court's decision 'cannot be located within the range of permissible decisions.'" *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (internal quotation marks and citation omitted). Although this was undoubtedly a hefty sentence, under that deferential standard, "we will set aside only those sentences that are so shockingly high, shockingly low, or otherwise unsupportable as a matter of law that allowing them to stand would damage the administration of justice." *United States v. Muzio*, 966 F.3d 61, 64 (2d Cir. 2020) (internal quotation marks and citation omitted). In doing so, we "assess[] the length of the sentence imposed in light of the [Section] 3553(a) factors," *Verkhoglyad*, 516 F.3d at 127 (alteration adopted) (internal quotation marks and citation omitted), and "take into account the totality of the circumstances, giving due deference to the sentencing judge's exercise of discretion, and bearing in mind the institutional advantages of district courts," *Cavera*, 550 F.3d at 190. When

---

[3]    Because we find that the district court did not consider any allegations of criminal conduct in sentencing Martin on the violation, we need not address Martin's due process and confrontation arguments, both of which are premised on his incorrect assertion that the district court improperly considered the uncharged conduct underlying his arrest.

reviewing a non-Guidelines sentence, "we may take the degree of variance into account and consider the extent of a deviation from the Guidelines," but we "must not employ a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." *Id*. at 190 (internal quotation marks and citation omitted). In other words, we do not "presume that a non-Guidelines sentence is unreasonable, or require extraordinary circumstances to justify a deviation from the Guidelines range." *Id.* (internal quotation marks and citation omitted).

Here, the district court did not abuse its discretion by imposing the 24-month sentence. The district court noted that "[t]here's been no justifiable explanation for [Martin's] violation" and that "Martin did not remain in contact with federal probation, nor did he turn himself in on this warrant." App'x at 54–55. Indeed, at the sentencing, Martin's attorney acknowledged that "there's a concerning record even [when] completely disregard[ing] the allegations surrounding his arrest" because of Martin's record of "noncommunication" and "cutting the ankle monitor." *Id*. at 46. Moreover, the district court emphasized that Martin's violation of supervision occurred only three months after the term of supervised release began, while he was concurrently on state parole.[4] Thus, as noted above, the district court relied heavily on the nature and circumstances of the violation and the need for the sentence imposed to afford adequate specific and general deterrence for Martin's serious breach of trust, *see* 18 U.S.C. § 3553(a)(1), (a)(2)(B).

---

[4] As the record reflects and as the district court was aware, this was not the first time that Martin had cut off his location monitoring device and absconded from supervision. *See United States v. Wright*, 819 F. App'x 50, 51 (2d Cir. 2020) (summary order) (noting that, as here, the district court was familiar with the defendant's record because it conducted his sentencing). On October 13, 2021, less than three months after starting probation for a prior state conviction, Martin was stopped by police while in a vehicle and fled on foot and cut off his GPS bracelet. Police subsequently searched that vehicle pursuant to a search warrant and recovered ammunition and narcotics.

*See also* App'x at 55–56 ("[A] significant sentence is required in order to deter Mr. Martin and others from similar violations of supervision.").

In sum, we conclude that the Section 3553(a) factors, upon which the district court relied in imposing the above-Guidelines sentence, "can bear the weight assigned [them] under the totality of the circumstances in [this] case," *Cavera*, 550 F.3d at 191, and the 24-month sentence was not "shockingly high . . . or otherwise unsupportable as a matter of law," *Muzio*, 966 F.3d at 64 (internal quotation marks and citation omitted). Therefore, the sentence was substantively reasonable.

*     *     *

We have considered Martin's remaining arguments and conclude that they are without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court