06-2245-cr
United States v. Sindima (amended)

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2006

(Argued: December 15, 2006          Decided:  March 5, 2007

As Amended:  May 21, 2007)

Docket No. 06-2245-cr

------------------------------------

UNITED STATES OF AMERICA,

Appellee,

- v -

FELIX SINDIMA,

Defendant-Appellant.

------------------------------------

Before:   SACK, KATZMANN, AND PARKER, Circuit Judges.

Appeal from a judgment of the United States District Court for the Western District of New York (Richard J. Arcara, Chief Judge) sentencing the defendant to thirty-six months' incarceration for violations of probation, where the high end of the advisory Guidelines range is ten months.

Remanded.

MARYBETH COVERT, Federal Public Defender's Office, Buffalo, NY, for Defendant-Appellant.

STEPHAN BACZYNSKI, Assistant United States Attorney for the Western District of New York (Terrance P. Flynn, United States Attorney, Joseph J. Karaszewski, Assistant United States Attorney, of counsel), Buffalo, NY, for Appellee.

SACK, Circuit Judge:

Following a guilty plea on federal mail fraud charges, the United States District Court for the Western District of New York (Richard J. Arcara, Chief Judge) imposed upon the defendant, Felix Sindima, a sentence under the United States Sentencing Guidelines (the "Guidelines") of, principally, three years' probation. The terms of probation included a prohibition against Sindima's commission of any further crime. Thereafter, while still on probation, Sindima was charged with two violations of that prohibition. The district court found Sindima guilty of both. On April 13, 2006, the court imposed a sentence of thirty-six months' imprisonment, twenty-six months above the high end of the advisory Guidelines range. Sindima appeals, asserting that the sentence is substantively unreasonable.

We conclude that, based on the present record, the district court has not given an explanation of its reasons for the length of the above-Guidelines sentence that is sufficient under the circumstances to allow us to conclude with confidence that the sentence is reasonable. Cf. United States v. Rattoballi, 452 F.3d 127, 128, 137 (2d Cir. 2006) (remanding where the district court imposed upon the defendant a sentence "represent[ing] a substantial deviation from the recommended Guidelines range" and the "considerations [relied upon by the district court in so doing were] neither sufficiently compelling nor present to the degree necessary to support the sentence imposed"). Accordingly, we remand for further proceedings.

**BACKGROUND**

On December 9, 2002, Sindima pleaded guilty to one count of mail fraud arising out of a scheme in which he caused two computer retailers to send computer equipment to him using the names and social security numbers of others. On May 15, 2003, the district court sentenced Sindima within his Guidelines range of zero-to-six months by imposing three years' probation and restitution in the amount of $9,356.88. The provisions of Sindima's probation included the standard condition that he not commit another crime while on probation.

On August 10, 2005, while Sindima remained on probation, the government filed a petition alleging two violations of that condition -- crimes he had allegedly committed and for which he had been arrested by the Buffalo Police Department.[1] On September 21, 2005, the district court conducted an evidentiary hearing. Thereafter, on December 29, 2005, the court found Sindima guilty of both charges.

The evidence presented at the hearing indicated that on or about April 26, 2005, almost two years after his mail fraud sentence, Sindima opened a series of bank accounts in the name of "FS Computers." The first was with Bank of America, where he deposited $3,200 with two checks that were eventually returned for insufficient funds. Prior to the checks being returned, Sindima withdrew $3,400 from the Bank of America account, $3,000 of which

---

[1] The state charges against Sindima were eventually dismissed.

he used to establish a similar account at Evans National Bank. On June 13, 2005, after this $3,000 check and another check for $760 were returned for insufficient funds, Evans National Bank informed Sindima that his account had been suspended. Undaunted, Sindima deposited another check, but it was also returned for insufficient funds. On June 24, 2005, he then wrote a $3,700 check drawn on his still-suspended Evans account which he used to open a third account at the Greater Buffalo Savings Bank. In accordance with its policy, however, the bank placed an automatic nine-day hold on the newly opened account. This check was subsequently returned for insufficient funds, along with another check from a bank account in his wife's name, which Sindima had also sought to deposit. Sindima was eventually arrested following an attempt to withdraw $200 from and deposit $11 to the Greater Buffalo Savings Bank account.

On January 23, 2006, the district court held an initial sentencing hearing, at which time it evidently accepted the Probation Office's calculation that Sindima's violations were "Grade B"[2] and his criminal history category was I, for which the Guidelines prescribe an advisory range of four-to-ten months.[3] The

---

[2] A Grade B violation is defined as "conduct constituting [a] . . . federal, state, or local offense punishable by a term of imprisonment exceeding one year." U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 7B1.1(a)(2). A Grade B violation is the middle tier of a three-tiered scheme for punishment of probation violations. Grade A violations are those crimes involving violence, controlled substances, or firearms, or those punishable by more than twenty years in prison. Grade C violations are crimes punishable by one year of imprisonment or less or the violation of any other probation condition. Id. §§ 7B1.1(a)(1), (3).

[3] The Guidelines here at issue are ranges derived from "advisory policy statements" with respect to probation violations. See U.S.S.G. §§ 7B1.1-7B1.5. These policy statements provide various "Guidelines ranges" based upon the grade of probation violation and the violator's criminal history. Id. § 7B1.4. Sentences imposed thereunder were advisory even prior to United

court gave the government and Sindima notice, however, that it was considering a non-Guidelines sentence of sixty months, the statutory maximum.[4] Following adjournment of the sentencing hearing, defense counsel submitted additional letters from various persons attesting to Sindima's good character and a supplemental memorandum urging leniency.

On April 13, 2006, the district court sentenced Sindima for violation of probation. Although the high end of the advisory Guidelines range is ten months, and defense counsel and the government had "urge[d]" the district court to impose a Guidelines sentence, Tr., Apr. 13, 2006, at 14, 15, the court sentenced Sindima to, principally, thirty-six months in prison.[5] After expressing its view that Sindima was "a danger to the community," id. at 10, the district court explained the reasons for its sentence. First, the court indicated that it sentenced Sindima to

> a term of imprisonment above the recommended
> [G]uideline[s] range because of what I consider
> egregious conduct while on probation. Despite
> being given a substantial break by this Court
> by being sentenced to probation, [Sindima] went
> out and committed numerous additional acts
> of . . . fraud. He, obviously, did not learn
> his lesson while on probation. He's exhibited
> complete disregard for the rules of law.

States v. Booker, 543 U.S. 220 (2005). See United States v. Goffi, 446 F.3d 319, 322 (2d Cir. 2006). Following Booker, the standard of review of sentences issued under the formerly mandatory Guidelines and the long-advisory probation policy statements is the same. See United States v. Lewis, 424 F.3d 239, 243 (2d Cir. 2005).

[4] Because the district court sealed Simdima's pre-sentence report in its entirety, we omit its findings and recommendations from this account.

[5] Sindima was also sentenced to three years' supervised release and ordered to pay restitution. He does not appeal these aspects of his sentence.

It is clear this sentence . . . was necessary to address the extent of the criminal behavior and to deter the defendant from future acts of fraud. This is not a situation where the defendant has made an isolated bad judgment call while on probation. Instead, he engaged in a calculated pattern of fraudulent activity on a repeated basis in complete disregard of the terms of his probation.

Tr., Apr. 13, 2006, at 17.

Second, however, the district court was persuaded in some respects by the mitigating factors presented by defense counsel -- that Sindima provided financial and emotional support to five children, that he had continued his college studies while on probation, and that he had volunteered in a center for the elderly and in his church. Id. at 6-7; see also Def's. Second Sent'g Mem. These factors "were considered and [were] the reason why" Sindima received a "lesser sentence" than the five-year statutory maximum. Tr., Apr. 13, 2006, at 17.[6]

The district court did not record its reasons for the sentence in its written judgment.

**DISCUSSION**

I.  Standard of Review

---

[6] During the sentencing colloquy, the district court devoted much of its attention to Sindima's relationship with his church, which the court seemed to regard as inconsistent with his protestations of sincerity and remorse.  For example, the court remarked:

> [W]hen you go to church and you share the services and your religion with other people . . . everybody in that church . . . kind of bonds together. . . . Unless, maybe, someone isn't quite sincere. . . . I think that's very unfortunate that you go to church, being very outwardly,[sic] appears to be very sincere, very religious, and will follow all the precepts of the religion, and I am sure -- I'm not sure what all the religious beliefs are, but I'm sure it doesn't say you can defraud banks.

Tr., Apr. 13, 2006, at 11.

We review sentences for reasonableness, <u>United States v. Booker</u>, 543 U.S. 220, 261 (2005), which has both substantive and procedural dimensions, <u>see</u> <u>United States v. Crosby</u>, 397 F.3d 103, 114 (2d Cir. 2005). In the substantive dimension in which this appeal is raised, we determine "whether the length of the sentence is reasonable," <u>Rattoballi</u>, 452 F.3d at 132, focusing our attention on the district court's explanation of its sentence in light of the factors detailed in 18 U.S.C. § 3553(a),[7] <u>see</u> <u>id.</u> at 134-35.[8]

---

[7] Section 3553(a) provides, in pertinent part:

> The court shall impose a sentence <u>sufficient, but not greater than necessary</u>, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider --
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed --
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established [and recommended by the Sentencing Guidelines] . . .
>
> (5) any pertinent policy statement . . . issued by the Sentencing Commission . . .
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of

Reasonableness review "is akin to review for abuse of discretion." United States v. Fernandez, 443 F.3d 19, 27 (2d Cir.), cert. denied, 127 S. Ct. 192 (2006). A district court abuses its discretion when its decision "cannot be located within the range of permissible decisions" or is based either on an error of law or a clearly erroneous factual finding. United States v. Fuller, 426 F.3d 556, 562 (2d Cir. 2005) (citations and internal quotation marks omitted). We have observed that "'reasonableness' is inherently a concept of flexible meaning, generally lacking precise boundaries," Crosby, 397 F.3d at 115; that it involves "some degree of subjectivity that often cannot be precisely explained," United States v. Jones, 460 F.3d 191, 195 (2d Cir. 2006); and that our function in reviewing sentences is to "exhibit restraint, not micromanagement," United States v. Fleming, 397 F.3d 95, 100 (2d Cir. 2005). Accordingly, "[a]lthough the brevity or length of a sentence can exceed the bounds of 'reasonableness,' we [have] anticipate[d] encountering such circumstances infrequently." Id. Nevertheless, "in any particular case a sentence, assessed even against the flexible standard of reasonableness, [may] be so far above or below a Guidelines range and so inadequately explained

similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a) (emphasis added).

[8] For a sentence to be procedurally reasonable, the district court must have correctly "(a) identified the Guidelines range supported by the facts found by the court, (b) treated the Guidelines as advisory, and (c) considered the Guidelines together with the other [§ 3553(a)] factors." Rattoballi, 457 F.3d at 131. Sindima does not allege his sentence was procedurally unreasonable.

by the sentencing judge as to require rejection on appeal." Jones, 460 F.3d at 196.

## II. Section 3553(c)

A district court is statutorily required to "state in open court the reasons for its imposition of [a] particular sentence." See 18 U.S.C. § 3553(c). Where, as here, the sentence is outside of an advisory Guidelines range, the court must also state "with specificity in the written order" "the specific reason" for the sentence imposed. Id. § 3553(c)(2); see also Jones, 460 F.3d at 196; United States v. Lewis, 424 F.3d 239, 243-45 (2d Cir. 2005).

"[O]ur . . . ability to uphold a sentence as reasonable will be informed by the district court's statement of reasons (or lack thereof) for the sentence that it elects to impose." Rattoballi, 452 F.3d at 134. Fulfilment of the statutory requirements of section 3553(c) thus enables us to perform reasonableness review. Cf. United States v. Pereira, 465 F.3d 515, 524-25 & n.9 (2d Cir. 2006) (discussing sufficiency of oral explanation under § 3553(c) in terms of its ability to render sentence reasonable).

Yet as much as our review of a sentence depends upon the reasons given for it, we have declined to encroach upon the province of district courts by dictating a precise mode or manner in which they must explain the sentences they impose. As we have frequently observed, we do not require district courts to engage in the utterance of "robotic incantations" when imposing sentences in

9

order to assure us that they have weighed in an appropriate manner the various section 3553(a) factors. Crosby, 397 F.3d at 113; see also Fernandez, 443 F.3d at 29 ("'[N]o specific verbal formulations should be prescribed to demonstrate the adequate discharge of the duty to "consider" matters relevant to sentencing.'" (quoting Fleming, 397 F.3d at 100)). And where, as here, the district court imposes a non-Guidelines sentence, unlike many other circuits we have been -- and remain -- disinclined to adopt a more mechanical rule requiring "a more compelling accounting the farther a sentence deviates from the advisory Guidelines range." Rattoballi, 452 F.3d at 134; id. (citing cases).

"We have declined to articulate precise standards for assessing whether a district court's explanation of its reason for imposing a non-Guidelines sentence is sufficient . . . ." Pereira, 465 F.3d at 524. But, in the course of imposing a sentence, the district court's statement of reasons must at least explain -- in enough detail to allow a reviewing court, the defendant, his or her counsel, and members of the public to understand, see Lewis, 424 F.3d at 247 -- why the considerations used as justifications for the sentence are "sufficiently compelling []or present to the degree necessary to support the sentence imposed." Rattoballi, 452 F.3d at 137.

III. Sindima's Sentence

Sindima's thirty-six month sentence was twenty-six months greater than the ten-month high end of the advisory Guidelines range applicable to his violation of probation. We find it

instructive, for purposes of comparison, that Sindima's criminal record put him in the minimum criminal history category: I. Had he been, by stark contrast, a career criminal with a criminal record placing him in the maximum category, VI, the <u>high end</u> of his range would have been twenty-seven months, nine months <u>shorter</u> than the sentence the district court imposed upon him. <u>See</u> U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 7B1.4(a) (setting forth a Guidelines range of 21-27 months for a Grade B violator with criminal history category VI). Similarly, had Sindima's conduct fallen within the most serious of probation violations -- crimes of violence, drug or firearms crimes, and crimes punishable by more than twenty years' imprisonment -- the high end of the applicable Guidelines range would have been eighteen months, <u>half</u> the length of incarceration imposed upon him by the district court. <u>Id.</u> Sindima's sentence therefore strikes us as "marginal." <u>Rattoballi</u>, 452 F.3d at 135. The statement of reasons given by the district court does not on the present record support the severity of the sentence. We do not foreclose the possibility that there may be reasons that impelled the court to impose it which, if identified, would persuade us that the sentence was appropriate.

The first articulated basis for the length of the district court's sentence was that the defendant engaged in "egregious conduct" despite being given a "substantial break" at the time of his original sentencing. But the Sentencing Commission has indicated that while the three-tiered system for probation violations is "based on the defendant's actual conduct," U.S.S.G.

11

§ 7B1.1 cmt. n.1, sentences for probation violations are not intended to punish defendants for the conduct underlying the violation "as if that conduct were being sentenced as new federal criminal conduct." U.S.S.G. Chap. 7, Pt. A.3(b). The Commission adopted the policy, instead, that "the primary goal of a revocation sentence" ought to be "to sanction the violator for failing to abide by the conditions of the court-ordered supervision," in order to account for the breach of trust inherent in failing to appreciate the privileges associated with such supervision. Id. Thus, "at revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator." Id. (emphasis added); see also id. at § 7B1.3(f) (indicating sentence for probation violation to be served consecutively with any other sentence imposed).

Thus, it seems to us, when the district court relied on Sindima's recidivism in the face of the "substantial break" he received in his original sentence to impose a sentence substantially in excess of the advisory Guidelines maximum, Tr., Apr. 13, 2006, at 17, it was relying on a factor for which the Guidelines range was designed to account: Sindima's breach of the district court's trust that he would abide by the terms of his probation in return for having avoided incarceration. "When a factor is already included in the calculation of the [G]uidelines sentencing range, a judge who wishes to rely on that same factor to impose a sentence above or below the range must articulate

12

specifically the reasons that this particular defendant's situation is different from the ordinary situation covered by the [G]uidelines calculation." United States v. Zapete-Garcia, 447 F.3d 57, 60 (1st Cir. 2006). Accordingly, it may well have been reasonable for the district court to have imposed a non-Guidelines sentence based upon section 3553(a) factors already accounted for in the Guidelines range. The Guidelines "'can point to outcomes that may appear unreasonable to sentencing judges in particular cases.'" Rattoballi, 452 F.3d at 133 (quoting United States v. Jimenez-Beltre, 440 F.3d 514, 518 (1st Cir. 2006) (en banc)); see also United States v. Pickett, 475 F.3d 1347, 1353 (D.C. Cir. 2007) (noting that district courts sentencing defendants ought to "evaluate how well the applicable Guideline effectuates the purposes of sentencing enumerated in § 3553(a)"). But we cannot properly conduct our review absent an explanation by the district court of why a Guidelines sentence did not sufficiently account for those factors in Sindima's case. We do not know why the district court thought that the breach of trust inherent in Sindima's probation violations warranted a sentence of the magnitude imposed.

The district judge did emphasize that Sindima's probation violation was not "an isolated bad judgment call" and that it constituted an "egregious" scheme involving "a calculated pattern of fraudulent activity on a repeated basis," the same type of conduct for which he had been placed on probation in the first instance. Tr., Apr. 13, 2006, at 17. We do not doubt that these considerations are relevant in assessing the severity of Sindima's

13

breach of trust.  But we are instructed by the Sentencing Commission's policy to consider the conduct underlying the violation only "to a limited degree," U.S.S.G. Chap. 7, Pt. A.3(b), and by our prior case law that where a district court imposes its sentence based on "factors incompatible with the Commission's policy statements," the sentence may be substantively unreasonable absent a "persuasive explanation as to why the sentence actually comports with the § 3553(a) factors," Rattoballi, 452 F.3d at 134. The district court was required to consider the policies articulated by the Sentencing Commission related to the purposes of punishing probation violators.  See 18 U.S.C. § 3553(a)(4)(B); Rattoballi, 452 F.3d at 134.  The district court's stated reasons do not give us sufficient confidence that it did so.  We understand that Sindima's repeated fraudulent conduct may very well have rendered reasonable a variance above the ten-month high end of the advisory range.  But in light of the overall scope of the conduct involved, the limited criminal history of the defendant, and the relevant advice of the Guidelines, we cannot understand the striking size of the variance imposed in this case absent a more persuasive explanation for it.

We do not find the district court's statement of its second ground for Sindima's sentence, his personal characteristics, sufficiently compelling, either.  The district court's decision to sentence the defendant to less than the statutory maximum of five years on the basis of defense counsel's submissions as to Sindima's character tells us little about why the statutory maximum sentence

14

might have been reasonably considered or why a sentence of thirty-six months was reasonable under the circumstances.

We therefore conclude that on the present record, we are not confident that the grounds upon which the district court relied are "sufficiently compelling [and] present to the degree necessary to support the sentence imposed." Rattoballi, 452 F.3d at 137.  We therefore remand the case to the district court.  If the district court determines that the same sentence as that which is now in effect is indeed warranted, it may reimpose such a sentence accompanied by a statement of reasons that is "sufficiently compelling."  Id.  If, however, in light of the foregoing discussion, it determines that a different sentence is called for, it may impose that sentence accompanied by a statement of the reasons for it.  The court should also record its reasons for the sentence in its written judgment pursuant to 18 U.S.C. § 3553(c)(2).

We urge the district court to act within sixty days after the amended date of this decision.  After an amended judgment is issued by the district court, jurisdiction may be restored to this court by letter from any party, and the Clerk's Office of this court shall set an expeditious briefing schedule and send such proceeding to this panel for disposition.  See United States v. Jacobson, 15 F.3d 19, 21-22 (2d Cir. 1994).

**CONCLUSION**

For the foregoing reasons, we remand this cause to the district court for further proceedings consistent with this

15

opinion.