14-3162-cr
*United States v. Fama*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 22nd day of January, two thousand sixteen.

Present:
        CHESTER J. STRAUB,
        DEBRA ANN LIVINGSTON,
        DENNY CHIN,
            *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

        *Appellee,*

      v.                                    14-3162-cr

GARY FAMA,

        *Defendant-Appellant,*

JACK MANNINO,

        *Defendant.*

_____

For Appellee:                   TIANA A. DEMAS and Emily Berger, Assistant United States Attorneys, *for* Robert L. Capers, United States Attorney for the Eastern District of New York, Brooklyn, N.Y.

For Defendant-Appellant:     ELIZABETH E. MACEDONIO, Elizabeth E. Macedonio P.C., New York, N.Y.

Matthew B. Keller, Keller Law Firm, P.C., New York, N.Y.

**UPON DUE CONSIDERATION WHEREOF it is hereby ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED** in part, and **REMANDED** for further proceedings consistent with this order.

Defendant-Appellant Gary Fama appeals following his jury trial and judgment of conviction in the United States District Court for the Eastern District of New York (Kuntz, *J.*), entered on August 20, 2014. The criminal case concerns the December 29, 2011, robbery of a Capital One Bank in Brooklyn in which two individuals, one armed, stole $5,658. Fama, along with his co-conspirator, Jack Mannino, was charged in a Superseding Indictment, filed June 26, 2012, with armed bank robbery, in violation of 18 U.S.C. §§ 2113(a), 2113(d), 2, and 3551, *et seq.*, and for carrying and using a firearm during a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii), 2, and 3551, *et seq.* Following a jury trial, Fama was convicted on both counts. The district court sentenced Fama to a total of 420 months of imprisonment and five years of supervised release, and it ordered him to pay $5,658 in restitution and $200 in special assessments.

Fama raises two issues on appeal. First, he challenges the district court's ruling on a pretrial evidentiary motion, which allowed the Government to introduce evidence of a prior uncharged act. Second, he challenges his sentence, which was substantially above the advisory U.S. Sentencing Guidelines range, as both procedurally and substantively unreasonable. We assume the parties' familiarity with the underlying facts, procedural history of the case, and issues on appeal, and we describe them here only as necessary to explain our decision.

2

## I.     Evidence of a Prior Uncharged Act

Fama challenges the district court's grant of the Government's pretrial motion to admit evidence relating to a prior uncharged act.   The evidence at issue is the testimony of Mannino, who became a cooperating witness and testified against Fama at trial.   Mannino testified that he and Fama committed the bank robbery, and he provided details about the events preceding, during, and following the robbery.   Specifically, Mannino recounted that on the day of the robbery, while he and Fama were in his car deciding whether to rob a bank, Fama suggested the Capital One Bank because it did not "have a [bulletproof glass] window," and because "he robbed that bank previously some years back and it was successful.   He got caught but he got away with it."   Trial Tr. 448-49.   Mannino further testified that Fama also explained how the robbery should proceed: "He told me as we go into the bank, he was going to hold everyone down with the gun and I was going to jump over the counter. And he says, [a]s I'm running in they're probably going to lock the drawers, the teller drawers, and for me to just ask them to open them."   Trial Tr. 449.   As Mannino testified, the two then proceeded to rob the Capital One Bank in that manner.

The Government filed a motion seeking, in relevant part, to admit Fama's statement to Mannino that he had robbed the same physical bank in the past "and had 'gotten away with it.'"[1] A25.   Fama opposed the motion partly on the basis that evidence of a prior uncharged bank robbery by Fama constituted impermissible propensity evidence.   The district court granted the Government's motion, reasoning that "the statement explain[ed] why Fama would have chosen

---

[1]  Fama was a suspect in the investigation of the January 18, 2000, robbery of a Greenpoint Savings Bank branch that was located at the site of the present-day Capital One Bank.   The execution of a search warrant at Fama's home on January 26, 2000, in connection with that investigation, resulted in the recovery of firearms that Fama, as a convicted felon, could not lawfully possess.   Fama was charged and convicted with the unlawful possession of these weapons, but was never charged with the robbery of the Greenpoint Savings Bank.   While incarcerated for the firearms offense, Fama met Mannino, who at the time was serving a twelve-year sentence for bank robbery.

to rob the Capital One Bank as opposed to any other bank." A55. It demonstrated his "motive and intent to rob this particular bank" and not another bank in the vicinity. A55-56. To that end, the statement showed Fama's "knowledge of the physical layout of the bank, including entrances and exits." A55. Last, the court also determined that the statement "tend[ed] to show opportunity in that he previously robbed the bank and believed he could do it again." A56.

On appeal, Fama contends that the district court abused its discretion by admitting Mannino's testimony into evidence. Fama argues that the testimony was inadmissible for a purpose other than to show a propensity to commit the charged bank robbery, that the probative weight of the testimony did not outweigh the danger of unfair prejudice, and that the district court's limiting instruction did not abate the risk that the jury would use the testimony for an improper purpose. The Government argues, *inter alia*, that this Court can affirm on an independent ground: that the testimony was admissible because "'it arose out of the same transaction or series of transactions as the charged offense, [and] is inextricably intertwined with the evidence regarding the charged offense, or . . . necessary to complete the story of the crime on trial.'" Gov't Br. 35 (quoting *United States v. Alvarez*, 541 Fed. App'x 80, 85 (2d Cir. 2013) (summary order)).

This Circuit reviews a district court's evidentiary rulings with deference and reverses only if it finds an abuse of discretion. *United States v. Cuti*, 720 F.3d 453, 457 (2d Cir. 2013). A district court abuses its discretion if its evidentiary rulings are "based on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or if its decision cannot be located within the range of permissible decisions." *Id.* We have explained that evidence of uncharged criminal conduct, if it is "'inextricably intertwined with the evidence regarding the charged

4

offense,'" is not evidence of "other crimes, wrongs, or acts" under Rule 404(b). *United States v. Quinones*, 511 F.3d 289, 309 (2d Cir. 2007) (quoting *United States v. Towne*, 870 F.2d 880, 886 (2d Cir. 1989)). Rather, if it "'complete[s] the story of the crime on trial,'" *id.* (quoting *Towne*, 870 F.2d at 886), then the evidence of the uncharged act is properly "treated as 'part of the very act charged,' or, at least, as proof of that act," *id.* (quoting *United States v. Concepcion*, 983 F.2d 369, 392 (2d Cir. 1992)).

We may affirm on any ground so long as it is clearly supported in the record. *Grieve v. Tamerin*, 269 F.3d 149, 154 (2d Cir. 2001). In this case, the record is clear that Mannino's testimony is "inextricably intertwined" with the evidence supporting the Government's case for the charged offenses. Mannino's testimony about Fama's comments to him (which was the only evidence related to Fama's participation in the earlier bank robbery that the jury heard) explained the robbers' choice of which bank to rob. Fama made the comments, in fact, immediately before the commission of the crime while the two were planning the robbery. Mannino's testimony also shed light on *why* the two men went to the Capital One Bank in particular—because Fama knew that it did not have bulletproof glass teller windows, based on the previous successful robbery—and how they came to agree on how to commit the upcoming robbery (in which Fama was to hold everyone down with the gun, and Mannino would jump over the counter). Indeed, drawing on Fama's past experience, Fama and Mannino proceeded to commit the robbery at the Capital One Bank in precisely the manner on which they had agreed.

In such circumstances, we conclude that the district court did not abuse its discretion in admitting the testimony into evidence. The brief testimony "'complete[d] the story of the crime on trial.'" *Quinones*, 511 F.3d at 309 (quoting *Towne*, 870 F.2d at 886). And the district court properly instructed that the evidence could not be used "as proof that the defendant has a

criminal personality or bad character." G.A. 95. Thus, the district court did not err in permitting the jury to consider it.

## II.    Fama's Sentence

Fama next argues that the above-Guidelines sentence was both procedurally and substantively unreasonable. We review the reasonableness of a sentence under a "deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007). When considering the procedural reasonableness of a sentence, we "take a deferential approach and refrain from imposing any rigorous requirement of specific articulation by the sentencing judge." *United States v. Fleming*, 397 F.3d 95, 99 (2d Cir. 2005). We will, however, set aside a sentence as procedurally unreasonable if the district court "'fails to calculate (or improperly calculates) the Sentencing Guidelines range, treats the Sentencing Guidelines as mandatory, fails to consider the [18 U.S.C.] § 3553(a) factors, selects a sentence based on clearly erroneous facts, or fails adequately to explain the chosen sentence.'" *United States v. Chu*, 714 F.3d 742, 746 (2d Cir. 2013) (quoting *United States v. Robinson*, 702 F.3d 22, 38 (2d Cir. 2012)).

Fama challenges the procedural reasonableness of his sentence, *inter alia*, because the district court did not adequately explain its reasons for imposing a 420-month-long sentence of imprisonment—a sentence substantially above the advisory Guidelines range of 147 to 162 months' imprisonment. A district court is required, under 18 U.S.C. § 3553(c), to "state in open court the reasons for its imposition of [a] particular sentence." When a district court sentences outside the Guidelines range, moreover, it must also state, both in open court and in a written order, the specific reason for imposing a sentence different from that prescribed by the Guidelines. *See United States v. Sindima*, 488 F.3d 81, 85 (2d Cir. 2007). Critically, when a district court deviates from an advisory Guidelines range, it "'must consider the extent of the

6

deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (quoting *Gall*, 552 U.S. at 50). An appellate court, in turn, "may 'take the degree of variance into account and consider the extent of a deviation from the Guidelines.'" *Id.* at 190 (quoting *Gall*, 552 U.S. at 47). A significant variance from the Guidelines "'should be supported by a more significant justification than a minor one.'" *Id.* at 193 (quoting *Gall*, 552 U.S. at 50). For a major variance, the district court bears a "higher descriptive obligation." *United States v. Cassesse*, 685 F.3d 186, 193 (2d Cir. 2012).

Because Fama did not lodge an objection on this basis at sentencing, we review only for plain error. *Id.* at 188. We conclude, however, that the district court plainly did not meet its higher descriptive obligation in the circumstances here. There is no question that the district court sentenced significantly outside the Guidelines range: even assuming a sentence at the top of the Guidelines, the district court varied upwards from the advisory 162 months' incarceration to the 420 months' incarceration that it actually imposed. Upon the Government's prompting at sentencing, the district court provided some oral explanation for this variance (though it did not ultimately do so in the Statement of Reasons beyond checking the boxes that list the § 3553(a) factors). But the district court simply recited Fama's criminal history, as provided in the Presentence Report ("PSR"), without explaining why the Guidelines range itself did not already adequately account for what the district court characterized—not inaptly—as "a lifetime of crime." A94. Beyond Fama's criminal history, moreover, the district court stated that it had "seen no shred of evidence of remorse," A94, and only briefly noted the statement about the uncharged bank robbery, without explaining any findings, A93-94. We conclude that the explanation was inadequate in light of the magnitude of the variance.

7

It is not improper for a district court to rely on uncharged conduct in fashioning a sentence for convicted conduct if it makes appropriate factual findings by a preponderance of the evidence. *See United States v. Aldeen*, 792 F.3d 247, 254 (2d Cir. 2015). But there is a lack of clarity about how, or to what extent, the district court relied on the uncharged bank robbery. On the one hand, the district court stated "that we don't punish people in this country for crimes with which they were not charged and crimes for which they were not convicted by a jury of their peers beyond a reasonable doubt." A91. On the other hand, the district court then went on to reference the Mannino testimony without making any explicit findings of fact or explaining for what purpose it considered it. A93-94 ("[T]here is obviously . . . the testimony of Mannino in this case with respect to the prior bank robbery at Capital One, and the fact that Mr. Mannino and the defendant conspired to rob the bank when they got out of jail with the statements, according to Mr. Mannino, that Mr. Fama had said he had . . . [']gotten away['] with the previous robbery and the physical attachments to evidence from that robbery that was never charged nor was he ever convicted of."). From that statement, the extent to which the district court relied on the nature of the first robbery, as detailed in the PSR, is similarly unclear. Given that Fama objected to this portion of the PSR, the district court apparently overruled the objection but did not explain its basis for doing so.

We have explained that when a district court's statements at sentencing "provide[] 'an insufficient basis . . . for us to determine why the district court did what it did,' that is an error that affects a defendant's 'substantial rights.'" *United States v. Ware*, 577 F.3d 442, 452 (2d Cir. 2009) (second alteration in original) (quoting *United States v. Lewis*, 424 F.3d 239, 247 n.5 (2d Cir. 2005)). While a brief explanation such as the present one may have sufficed for a more limited upward variance from the Guidelines, we conclude that it does not afford an adequate

8

basis for a reviewing court to understand "why the considerations used as justifications for the sentence are 'sufficiently compelling []or present to the degree necessary to support the sentence imposed.'" *Sindima*, 488 F.3d at 86 (alteration in original) (quoting *United States v. Rattoballi*, 452 F.3d 127, 137 (2d Cir. 2006)). In such circumstances, the district court plainly erred, and it is appropriate for us to seek additional explanation "'to support the degree of the variance'" from the Guidelines range. *Cavera*, 550 F.3d at 189 (quoting *Gall*, 552 U.S. at 50).

The district court was also required to state its reasons "with specificity" in the written judgment of conviction as required by § 3553(c)(2). In its non-public statement of reasons, the district court checked the box for a sentence "above the advisory guidelines range," and then checked five boxes in Part VI(C), but left blank Part VI(D), which asked for an explanation of "the facts justifying a sentence outside the advisory guidelines system." This statutory obligation should be remedied on remand. *See Aldeen*, 792 F.3d at 254-55.

Accordingly, we remand with instructions to vacate Fama's sentence and to conduct resentencing proceedings. Because we are remanding the case for resentencing, we do not consider here Fama's additional sentencing arguments. In the interest of judicial economy, however, this panel will retain jurisdiction over any subsequent appeal. *See United States v. Jacobson*, 15 F.3d 19, 22 (2d Cir. 1994).

## III. Conclusion

We have considered Fama's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** Fama's conviction, and **REMAND** for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

9