18-3766
*United States v. FNU LNU*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of February, two thousand twenty.

PRESENT:
> JOHN M. WALKER, JR.,
> BARRINGTON D. PARKER,
> SUSAN L. CARNEY,
> > *Circuit Judges.*

---

UNITED STATES OF AMERICA,

> *Appellee,*

> v.                                             No. 18-3766

FNU LNU,

> *Defendant-Appellant,*

KAY OYEWUMI, TUNDE OGUNRINKA, AKA
Baba Tolani, TAIWO ADEKANBI, AKA Taiye,
ADEMILOLA OGUNMOKUN, AKA Jimmy,
AKA Aburo, AKA Olasupo Ogunmokun,

> *Defendants.*\*

---

\* The Clerk of Court is directed to amend the caption as above.

FOR DEFENDANT-APPELLANT: STEVEN G. BRILL, Sullivan & Brill, LLP, New York, NY.

FOR APPELLEE: CECILIA E. VOGEL (Karl N. Metzner, *on the brief*), Assistant United States Attorneys, *for* Geoffrey S. Berman, United States Attorney for the Southern District of New York, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Sullivan, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on December 14, 2018, is **AFFIRMED**.

FNU LNU ("Appellant") appeals from a judgment of the United States District Court for the Southern District of New York (Sullivan, *J.*) imposing a 36-month sentence of incarceration—the statutory maximum—to be followed by a life term of supervised release, for his violations of the terms of his supervised release.[1]

On September 24, 2010, Appellant was sentenced to 110 months of incarceration, to be followed by four years of supervised release, after a jury found him guilty of conspiracy to distribute and possess with intent to distribute one or more kilograms of heroin, in violation of 21 U.S.C. § 846; provision of false statements (specifically, a false name, social security number, and date and place of birth) to federal agents, in violation of 18 U.S.C. § 1001; and aggravated identity theft, in violation of 18 U.S.C. § 1028A. We affirmed those convictions, as well as Appellant's sentence, in *United States v. Adekanbi*, 675 F.3d 178, 181 (2d Cir. 2012).[2]

On July 5, 2017, Appellant was released from custody and began his four-year term

---

[1] FNU LNU is used by the Court to signify "First Name Unknown, Last Name Unknown."

[2] Unless otherwise noted, when quoting from published judicial decisions, all internal quotation marks, brackets, and citations have been omitted.

of supervised release. Approximately one year into that term, on July 25, 2018, the U.S. Probation Office ("Probation") reported to the District Court that Appellant had violated the terms of supervised release in several respects. Several months later, on October 24, 2018, Appellant pleaded guilty to two such violations—state law charges of criminal impersonation and identity theft—and a third violation, for leaving the jurisdiction of his supervised release without Probation's permission. As particularly relevant here, the misconduct that formed the basis of the state law specifications was that Appellant was "persisting in using the same name, same date of birth, [and] same Social security number that formed the basis for his prior conviction." App'x 42-43. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm.

We apply "a particularly deferential form of abuse-of-discretion review," *United States v. Cavera*, 550 F.3d 180, 188 & n.5 (2d Cir. 2008), and, as a general rule, we review sentences for violations of supervised release under the same standard as we review sentences for a crime of conviction, *see, e.g.*, *United States v. McNeil*, 415 F.3d 273, 277 (2d Cir. 2005).

    1. *Procedural Reasonableness.*

First, Appellant argues that his sentence was procedurally unreasonable. A district court commits procedural error when it: (1) "fails to calculate the Guidelines range"; (2) makes a mistake in its Guidelines calculation, or treats the guidelines as mandatory"; (3) "does not consider the [18 U.S.C.] § 3553(a) factors"; (4) "rests its sentence on a clearly erroneous finding of fact"; (5) "fails adequately to explain its chosen sentence"; or (6) deviates from the Guidelines range without explanation. *Cavera*, 550 F.3d at 190. We further require a sentencing court to "state in open court the reasons for its imposition of a particular sentence," providing at least "enough detail to allow a reviewing court, the defendant, his or her counsel, and members of the public to understand . . . why the considerations used as justifications for the sentence are sufficiently compelling or present to the degree necessary to support the sentence imposed." *United States v. Aldeen*, 792 F.3d 247, 251-52 (2d Cir. 2015). Even so, we require "less rigorous specificity where, as here, a court sentences a defendant for violation of supervised release." *Id.* at 253.

We identify no procedural error on the part of the District Court. To the extent that Appellant contends that the court ignored the positive contributions he made while on supervised release, the record reflects otherwise. In fact, the sentencing court explicitly took note of those contributions, and accorded them little weight as mitigating factors based on its conclusion that the contributions were made possible only by Appellant's ongoing criminal conduct. *See* App'x 128 ("I can't say [Appellant] was lawfully employed since he used a false identity to get that employment. . . . [H]e was going to school, which is a productive thing, and he appears to have taken that seriously. Again, he was using a false name to be able to do that."). The District Court did not abuse its discretion in so concluding. *Cf. United States v. Verkhoglyad*, 516 F.3d 122, 131 (2d Cir. 2008) (explaining that "weight to be afforded any § 3553(a) factor is a matter firmly committed to the discretion of the sentencing judge" (internal quotation marks omitted)).

Contrary to Appellant's contention that the District Court mistakenly emphasized punishment as opposed to deterrence, the court's comments reflected an almost singular focus on protecting the public generally, by deterring others from committing similar offenses, *see* App'x 130 (observing that, if court gave Appellant a light sentence, "it would only be logical to expect that other people will do the same"); and specifically, by deterring Appellant from committing the same offense, *see id.* at 125 (explaining that sentence was intended to encourage Appellant "to be honest about his identity"); and instead ensuring he re-entered lawfully into society, *id.* at 145 (explaining that supervised release would allow court to ensure Appellant did not "persist in using . . . any false name or false identity"). Nor can it be said that the District Court abused its discretion in concluding that Appellant was more likely than the average defendant to reoffend given that, after being sentenced to nearly ten years of imprisonment for misconduct that included identity theft, he continued to use that same stolen identity in prison and after his release, refused to cease doing so until just before sentencing, when he assumed yet another false identity and lied to the government and the District Court about doing so.

Ultimately, the District Court discussed in detail and at numerous hearings Appellant's background and characteristics, the nature of his violations of supervised release,

4

and the court's concern about preventing future misconduct by Appellant and by others. These discussions were more than sufficient to justify the District Court's conclusion that Appellant's case was "unique" and that his conduct was different from "virtually everybody who is confronted with an arrest in the criminal justice system," *id.* at 140, thus warranting the sentence imposed, *see Aldeen*, 792 F.3d at 253.

   *2. Substantive Reasonableness.*

   Appellant also asserts that his sentence is substantively unreasonable. We vacate a sentence for substantive unreasonableness "only in exceptional cases where the trial court's decision cannot be located within the range of permissible decisions." *Cavera*, 550 F.3d at 189. We do not use substantive reasonableness review as "an opportunity for tinkering with sentences [we] disagree with," because "we place great trust in sentencing courts." *United States v. Dorvee*, 616 F.3d 174, 183 (2d Cir. 2010).

   The thrust of Appellant's argument is that, in fashioning his sentence, the District Court could take into account only Appellant's repeated use of a false identity—conduct, Appellant urges us, that, by itself, cannot justify his sentence. We are not persuaded. In *United States v. Sindima*, we explained that, in crafting a sentence for a violation of probation, "the court should sanction primarily the defendant's breach of trust, while taking into account, *to a limited degree*, the seriousness of the underlying violation and the criminal history of the violator" because those elements are already accounted for by the Guidelines. 488 F.3d 81, 86 (2d Cir. 2007) (emphasis in original). But we also recognized that the Guidelines may not sufficiently account for the severity of every crime, or the extent of every defendant's criminal history—the Guidelines are, after all, just that: guidelines. Thus, sentencing courts may impose an above-Guidelines sentence based on factors already reflected in some way in the Guidelines calculation if they "articulate specifically the reasons that this particular defendant's situation is different from the ordinary situation covered by the Guidelines calculation." *Id.* at 87.

   Here, as the District Court explained and as set forth above, Appellant was given numerous opportunities to stop using a stolen identity and to identify himself to the court.

5

Instead, he brazenly continued, for years following his release from prison, to use the very same identity he had been convicted of stealing and, to this day—as far as we are aware—he still has not been forthright with the District Court or with this Court about his name, background, nationality, or criminal history. Thus, not only was Appellant's conduct as described by the District Court "different from the ordinary situation covered by the Guidelines calculation," *id.* at 87, it provided a more-than-sufficient basis for the sentence imposed. As the District Court observed, to permit this persistent obfuscation without penalty is to invite others to rely on it as a tactic for avoiding their criminal past. Viewed in the context of the record on appeal, Appellant's sentence does not "stir[] the conscience," let alone "shock" it. *Aldeen*, 792 F.3d at 255 (emphases omitted). We easily conclude that the District Court acted within the permissible bounds of its discretion in imposing the statutory maximum term of incarceration, to be followed by a life term of supervised release.

* * *

For the reasons set forth above, the District Court's judgment is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court