16-3982-cr
United States v. Hurtado

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21st day of November, two thousand eighteen.

PRESENT:    JOHN M. WALKER, JR.,
            PIERRE N. LEVAL,
            CHRISTOPHER F. DRONEY,
                    *Circuit Judges*.
_____

UNITED STATES OF AMERICA,

                    *Appellee*,

            v.                                      No. 16-3982-cr

HERNAN HURTADO,

                    *Defendant-Appellant,*

JUANA LOPEZ, AKA Juana Hurtado, FERNANDO CASTANEDA, AKA Fernando Castaneda, SHALEZA AZIZ, AKA Lisa Aziz, VANESSA RAMIREZ,

                    *Defendants.*
_____

FOR APPELLEE:                            JESSICA LONERGAN, Assistant United States Attorney, (Karl Metzner, Assistant United States Attorney, *on the brief*), *for* Geoffrey S. Berman, United States Attorney for the Southern District of New York, New York, NY.

FOR DEFENDANT-APPELLANT:     STEVEN Y. YUROWITZ, New York, NY.

Appeal from a November 21, 2016, judgment of the United States District Court for the Southern District of New York (Cote, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the district court's sentence is **AFFIRMED**.

Defendant-Appellant Hernan Hurtado admitted before the United States District Court for the Southern District of New York to violating the conditions of his previously imposed probationary sentence. The district court sentenced Hurtado to five years imprisonment followed by three years of supervised release, with a special condition of supervised release prohibiting him from work involving telemarketing, direct mail, or a timeshare- or vacation-related business. Hurtado challenges the procedural and substantive reasonableness of his sentence and the special condition. We assume the parties' familiarity with the facts, procedural history, and issues on appeal, which we repeat only to the extent necessary to explain our decision.

## I.    Background

From 2008 to 2011, Hurtado participated with others in multiple fraudulent schemes involving sales of vacation timeshare interests. The participants called potential sellers of timeshare interests to inform them that the participants had located interested buyers, then charged the sellers thousands of dollars in fees without effectuating the sale.

In August 2009, Hurtado became the leader of his own such operation. Hurtado and his co-conspirators would perpetrate the scheme through one company, then form a new company with a different name whenever their victims had filed multiple consumer complaints with the Better Business Bureau ("BBB"), an Attorney General's Office, or online. Hurtado formed at least nine such companies between August 2009 and October 2011, and utilized over twenty bank accounts to receive funds from victims. Although Hurtado operated in Florida, the scheme used out-of-state business addresses and telephone numbers to create the false impression that the businesses were operating elsewhere.

Hurtado's scheme collected over two million dollars in proceeds from over a thousand victims.

Hurtado was arrested and pleaded guilty in the United States District Court for the Southern District of New York on April 13, 2012, to one count of mail fraud, one count of wire fraud, and two counts of conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. § 1341, § 1343, and § 1349, respectively. The United States Probation and Pretrial Services Department (the "probation department") then calculated Hurtado's adjusted offense level to be 30 and his criminal history category to be Category I, resulting in a sentencing Guidelines range of 97 to 121 months. Hurtado did not object to the calculation of this range.

The district court sentenced Hurtado on September 18, 2015. At the sentencing hearing, Hurtado told the court that he wished to pay restitution to his victims. The court responded that a commitment to make restitution was "one of the strongest statements one could make about admitting that you did wrong" and that it was "important to [the court] in fashioning the sentence." Sealed App'x at 61. The court adopted the recommended Guidelines range, but sentenced Hurtado to a non-Guidelines sentence of five years probation, explaining:

> I am going to impose a requirement that you pay 20 percent of your gross monthly income [in restitution], and if you can afford to pay more than that, I hope you do. I am taking a risk here that you truly have understood how wrong it was to defraud people . . . . I am trusting that the business you're running now is being run ethically and according to the law and that that will continue to be true. If it is not, you're going to be back before me, and I am going to see that I did something wrong here today, I made an error of judgment.

*Id.* at 62–63. One condition of probation was that Hurtado must "provide the Probation Department access to any and all requested financial information." *Id.* at 64.

On June 13, 2016, the probation office petitioned the district court to issue a summons based on five alleged Grade C violations[1] of Hurtado's probation, including failure to (1) report to the probation office within 72 hours of sentencing; (2) submit written monthly supervision reports; (3) make a good faith effort to pay restitution; (4) submit a financial disclosure statement with business documents; and (5) provide personal financial records. The petition included a June 9, 2016, report detailing the claimed factual bases

---

[1] A Grade C probation violation is defined as a criminal offense punishable by a term of imprisonment of one year or less, or a violation of any other condition of supervision. U.S.S.G. § 7B1.1(a)(3).

for the violations. The report stated that Hurtado had failed to submit documents verifying his income and that of his business, that he operated his business under three different names at three locations, and that he admitted to repeatedly changing the business name after receiving online consumer complaints. The report also described many expensive purchases Hurtado and his wife had made and indicated that Hurtado had paid only $1,600 in restitution to date out of the $2.2 million he owed.

On August 9, 2016, Hurtado admitted before the district court to the fifth specification, failure to provide personal financial records. Hurtado admitted that he failed to provide bank statements and payroll documents to his probation officer after she requested them on or about February 17, 2016, knowing that this violated his probation. Hurtado agreed with the court that the purpose of providing these documents was to help the probation department calculate his personal income and determine whether he was meeting his income-based restitution obligations. Citing the June 9 report, the district court expressed concerns about Hurtado's business, his "extravagant lifestyle" in contrast with the failure to pay restitution, and the "pattern of lies to the probation department," App'x at 58–59, and recalled that the probationary sentence had been based in large part on Hurtado's promise to pay restitution from a portion of the income he earned from his ongoing, presumably legitimate, business operations. The court ordered that Hurtado be remanded into custody, and scheduled a hearing for the sentencing on the violation of probation.

Before Hurtado was sentenced for the probation violation, the probation department prepared a "status report" dated November 2, 2016. This report concluded that, while on probation, Hurtado had "conducted business in the same deceptive manner" as when he operated the schemes for which he was convicted. Status Report at 3. The BBB had received multiple complaints about Hurtado's companies, awarding "F" ratings for nearly all of them, and Hurtado admitted to his probation officer that he changed his business's name several times to avoid negative reviews. The BBB had also determined that Hurtado was operating his companies without the proper licenses from the State of Florida, which the Florida Department of Agriculture and Consumer Services confirmed. Moreover, Hurtado's wife admitted in September 2016 that the business continued to operate without a license, and indicated that she and Hurtado had used an alias as a contact person on their most recent application to the BBB instead of their own names.[2]

The status report also detailed Hurtado's and his wife's purchases from April to September 2016, including more than $900 for two baseball tickets, dozens of charges in the hundreds or thousands of dollars from department and retail stores, restaurants, and other vendors, and a $2,593.11 monthly mortgage payment for a recently purchased five-

---

[2] Hurtado's wife was a co-defendant in the criminal prosecution.

bedroom house. By contrast, Hurtado had only repaid about $10,000 of his $2.2 million restitution balance. The probation department concluded that "there are multiple third-party risk issues with Hurtado," including his questionable business practices and excessive spending, and that it was "apparent that Hurtado has not learned from his past encounter with the Court." Status Report at 7, 9.

The status report calculated Hurtado's recommended Guidelines range for the probation violation to be three to nine months, reflecting his Grade C violation and Category I criminal history. *See* U.S.S.G. § 7B1.4. However, probation recommended a sentence of 36 months imprisonment and a special condition of supervised release that Hurtado "be prohibited from any employment that involves telemarketing, direct mail, or any timeshare or vacation related business to protect the community from Hurtado's fraudulent business schemes." Status Report at 9.

On November 18, 2016, in part relying on the November 2 status report, the district court sentenced Hurtado to five years imprisonment followed by three years of supervised release, including the recommended special condition limiting Hurtado's future employment. Although Hurtado's counsel asserted that Hurtado's new business was lawful and legitimate, he did not specifically challenge any of the probation department's factual findings in the status report. The district court then concluded that the business was "another variation of the fraud that underlies the conviction here," citing "the changing . . . names, the level of complaints, the failures to abide by Florida regulations, the deceit that's gone on in the licensing application process, [and] the use of aliases." App'x at 106. The court also described the expenditures detailed in the status report as "absolutely outrageous behavior for someone who owes restitution to victims of their fraud." App'x at 108.

In explaining the five-year sentence of imprisonment, the court told Hurtado that he had not "take[n] advantage of" the "enormous opportunity" he had previously been given and had "violated [the court's] trust," and that Hurtado's continued practices "suggest[ed]" that his business presented a risk to the community. App'x at 110. The court explained that Hurtado's failure to provide financial information to the probation department was "tied up with the fundamental violation of [Hurtado's] duty to pay restitution," which demonstrated Hurtado's "failure . . . to acknowledge to [him]self and sufficiently to [his] community the way [his] fraud victimized innocent people," whose victim impact letters were "heartbreaking." App'x at 110–11.

## II. Reasonableness of the Sentence

We review sentences—including those arising out of probation violations—for reasonableness, both procedural and substantive. *United States v. Sindima*, 488 F.3d 81,

5

84, 87 (2d Cir. 2007). A sentence is procedurally unreasonable if, *inter alia*, the court "does not consider the [18 U.S.C.] § 3553(a) [sentencing] factors, . . . rests its sentence on a clearly erroneous finding of fact" or "fails adequately to explain its chosen sentence," including "any deviation from the Guidelines range." *United States v. Cavera*, 550 F.3d 180, 190 (2d Cir. 2008) (*en banc*) (internal quotation marks omitted). A sentence is substantively unreasonable "only in exceptional cases" where it "cannot be located within the range of permissible decisions." *Id.* at 189 (internal quotation marks omitted).

Sentences of probation are "conditional and subject to revocation" until they expire or terminate. 18 U.S.C. § 3564(e). If a defendant violates a probation condition, the district court may revoke the probationary sentence and resentence the defendant to any sentence that the district court could have originally imposed for the underlying crimes. *Id.* § 3565(a)(2). Thus, "a probation violation does not trigger a sentence for the violation conduct, but a 'resentence' on the crime of conviction," taking into account that the defendant "has breached the trust placed in him by a probationary sentence." *United States v. Verkhoglyad*, 516 F.3d 122, 130 n.6 (2d Cir. 2008) (citing §§ 3564(e); 3565(a)(2)).

Guidelines ranges for sentences following probation violations are derived from "advisory policy statements" based on "the grade of probation violation and the violator's criminal history." *Sindima*, 488 F.3d at 83 n.3 (citing U.S.S.G. § 7B1.4). However, the commentary to these policy statements gives several examples in which departures may be warranted. Relevant here, an upward departure may be warranted "[w]here the original sentence was the result of a downward departure." U.S.S.G. § 7B1.4 application note 4.

Hurtado argues that his sentence was procedurally unreasonable because the district court (1) did not properly explain its weighing of the § 3553(a) factors; and (2) improperly based its upward departure from the Guidelines' policy statement on the disputed finding that Hurtado's business was still operating in a fraudulent manner. We reject these arguments.

"[W]e do not require 'robotic incantations' that the district court has considered each of the § 3553(a) factors." *Cavera*, 550 F.3d at 193. The court's explanation—that Hurtado's business practices, expenditures, and failure to pay his restitution obligations[3]

---

[3] We note that imprisonment for failure to pay restitution is permitted only if a defendant "willfully refused" or "failed to make sufficient bona fide efforts to pay," or else "alternatives to imprisonment [would not be] adequate to serve the purposes of punishment and deterrence." 18 U.S.C. § 3614(b); *see, e.g.*, *United States v. Colasuonno*, 697 F.3d 164, 180 (2d Cir. 2012) (upholding district court's decision to revoke probation for a "willful violation" of defendant's restitution obligations). There is no suggestion here that the district court punished Hurtado for his inability to pay restitution—indeed, the court's references to Hurtado's "outrageous" spending demonstrates that it found, reasonably, that Hurtado was prioritizing personal expenses over restitution.

showed that he was not taking responsibility for a fraudulent scheme that greatly affected many innocent people—reflects consideration of several of the § 3553(a) factors, including the "nature and circumstances of the offense," 18 U.S.C. § 3553(a)(1); and the need for the sentence to "reflect the seriousness of the offense, to promote respect for the law," and to "protect the public from further crimes of the defendant," *id.* § 3553(a)(2)(A), (C). This explanation was procedurally sufficient.

Moreover, the district court adequately explained its decision to depart upwardly from the Guidelines' policy statement. The court explained that it was sentencing Hurtado above the Guidelines range applicable to the probation violation, but still "substantially below [his] original guidelines," because Hurtado violated the trust the court placed in him by giving him a probationary sentence. App'x at 110. An upward departure for a probation violation following a previous downward departure is specifically contemplated in U.S.S.G. § 7B1.4 application note 4, and we have upheld the procedural reasonableness of sentences for probation violations based on similar explanations. *See Verkhoglyad*, 516 F.3d at 133 (finding that the district court had adequately explained a large upward departure by citing the "enormous sentencing breaks that it had repeatedly afforded" the defendant and determining that "it had erred in affording [him] leniency" because he had "misled the court about his intentions and his rehabilitation" (internal quotation marks omitted)).

Nor did the district court make clearly erroneous findings of fact when it relied on the probation department's November 2, 2016, status report. A sentencing court is "largely unlimited either as to the kind of information it may consider, or the source from which it may come," including "hearsay evidence." *United States v. Gomez*, 580 F.3d 94, 105 (2d Cir. 2009) (internal quotation marks omitted). Although Hurtado challenges the status report's conclusion that his business continued to be fraudulent, he does not contest any of the factual bases for that conclusion, including that he changed his business's name multiple times in response to consumer complaints, that he used aliases, or that he operated without a state license. Hurtado's use of multiple companies and names to evade complaints is similar to the way he conducted the scheme underlying his original conviction, and the other practices are at least suspicious given Hurtado's history. On this basis, we find no clear error in the district court's conclusion that Hurtado's business practices "suggest" a "risk to [the] community." App'x at 110. The district court was entitled to consider this activity in deciding to issue an above-Guidelines sentence. *See* U.S.S.G. § 7B1.4 application note 3 (allowing an upward departure for "a Grade C violation that is associated with a high risk of new felonious conduct").

Hurtado's substantive unreasonableness arguments overlap with his procedural unreasonableness arguments. He contends that the district court's upward departure was not justified based on the combination of the court's belief that his new business was

fraudulent, his failure to pay restitution, and the leniency shown at his original sentence. We disagree.

"[O]n revocation of probation, a resentence that falls within the range for the underlying crime of conviction will rarely qualify as too severe to be substantively reasonable." *Verkhoglyad*, 516 F.3d at 135. Hurtado's 60-month sentence is far below the 97- to 121-month range applicable to his underlying crimes of conviction. Hurtado offers no compelling reason why this is an "exceptional case[]" in which his sentence "cannot be located within the range of permissible decisions." *Cavera*, 550 F.3d at 189 (internal quotation marks omitted); *see Verkhoglyad*, 516 F.3d at 134–36 (finding a 57-month sentence on a probation violation to be substantively reasonable where the sentence fell within the Guidelines range for the underlying conviction, the court had previously been lenient, and the defendant breached the court's trust by using drugs in violation of his conditions of probation).[4]

Accordingly, Hurtado's 60-month sentence of imprisonment following his probation violation was neither procedurally nor substantively unreasonable.

## III.  Reasonableness of the Employment Restriction

At sentencing, the district court "may impose a condition of . . . supervised release prohibiting the defendant from engaging in a specified occupation, business, or profession . . . only if it determines that: (1) a reasonably direct relationship existed between the defendant's occupation, business, or profession and the conduct relevant to the offense of conviction; and (2) imposition of such a restriction is reasonably necessary to protect the public because there is reason to believe that, absent such restriction, the defendant will continue to engage in unlawful conduct similar to that for which the defendant was convicted." U.S.S.G. § 5F1.5(a). This condition should be imposed "for the minimum time and to the minimum extent necessary to protect the public." *Id.* § 5F1.5(b). Although district courts have "broad discretion to tailor conditions of supervised release," *United States v. Gill*, 523 F.3d 107, 108 (2d Cir. 2008) (per curiam) (internal quotation marks omitted), we "carefully scrutinize unusual and severe conditions, such as one

---

[4] Hurtado attempts to distinguish *Verkhoglyad* by pointing out that the defendant in that case had engaged in further criminal conduct. But we have made clear that "sentences for probation violations are not intended to punish defendants for the conduct underlying the violation as if [it] were being sentenced as new federal criminal conduct," but rather for "the breach of trust inherent in failing to appreciate the privileges associated with [probationary] supervision." *Sindima*, 488 F.3d at 86 (internal quotation marks omitted). Thus, whether the probation violation involves conduct that is criminal is not as relevant as whether it involves conduct that manifests a breach of the court's trust. Here, Hurtado's failure to honor the representations he made to the court at his original sentence manifests a breach of trust regardless of whether his violation was criminal.

8

requiring the defendant to give up a lawful livelihood," *United States v. Cutler*, 58 F.3d 825, 838 (2d Cir. 1995) (internal quotation marks omitted). Restrictions on a defendant's pursuit of his previous occupation may be warranted in particular "where the unlawful conduct [related to the occupation] was continued or repeated." *United States v. Doe*, 79 F.3d 1309, 1322 (2d Cir. 1996).

The restriction at issue prohibits Hurtado from being engaged in employment in telemarketing, direct mail, or timeshare- or vacation-related businesses. The district court gave the same explanation for imposing this condition as it did for the sentence: Hurtado's business practices and evasion of his restitution obligations showed that he was not taking responsibility for his prior fraudulent activity, and presented a continued risk to the community. As explained above, the district court did not clearly err by relying on the status report's undisputed facts to reach these conclusions.

There is a reasonably direct relationship between the occupational restrictions and Hurtado's relevant conduct: Hurtado's original conviction involved soliciting fraud victims over the phone in the timeshare industry, and his new business, which bore some of the same hallmarks of his original fraudulent scheme, was in the vacation industry. Although it is less clear what role direct mail played in Hurtado's fraudulent activity, it was reasonable for the district court to include direct mail in the list of restrictions as a possible alternative to soliciting fraud victims over the phone.

Moreover, the district court did not abuse its discretion by determining that these restrictions were necessary both in scope and in length of time to protect the public. Hurtado's original scheme defrauded over a thousand people out of over two million dollars, and the district court was entitled to conclude that his new business's deceptive practices and his apparent lack of effort to make restitution suggested that he had not reformed as promised and might defraud other members of the public in the future.

We reject Hurtado's argument that the restrictions were overbroad because the district court "could have easily imposed conditions to address any concerns that it may have had rather than impose the complete ban it did," such as a requirement that if "his business rating fell below a certain score he must notify probation." Appellant's Reply Br. at 5. Although the district court could have imposed a series of conditions to prevent Hurtado from engaging in fraudulent vacation-related business, it was neither unreasonable nor an abuse of discretion for the court to determine that a total ban on employment in specific types of businesses was necessary "to protect[] the public [and] to rehabilitat[e] the defendant." *United States v. Tolla*, 781 F.2d 29, 34 (2d Cir. 1986). Hurtado had already pleaded guilty to violating a probation condition that he cooperate with the probation department in providing requested financial records, making it reasonable to presume that he would also fail to notify the probation department of specific events, such

as a drop in his business's BBB score.   Furthermore, the employment restriction set by the district court is narrower in scope than the conditions we have struck down as overbroad in prior cases.   *See, e.g.*, *United States v. Peterson*, 248 F.3d 79, 81–84 (2d Cir. 2001) (per curiam) (vacating an employment restriction prohibiting the defendant from using commercial computer systems or services for employment purposes without the probation department's permission because it was excessively broad and not reasonably necessary to protect the public from future crimes).

*   *   *

We have considered Hurtado's remaining arguments and conclude that they are without merit.   Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

10